# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the Use and Benefit of GREENMOOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, and BURCHICK CONSTRUCTION COMPANY, INC., <br><br> Defendants. | Civil Action No. 06-cv-0234 <br><br> Magistrate Judge Cathy Bissoon |

## MEMORANDUM ORDER

### I.     MEMORANDUM

Pending before the Court are (1) Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. 152) and (2) Defendant Burchick Construction Company's Renewed Motion for Attorneys' Fees, Related Costs and Expenses (Doc. 154). For the reasons that follow, Plaintiff Greenmoor, Inc.'s Motion is denied and Defendant Burchick Construction Company's Renewed Motion is granted in part and denied in part.

It is well-established that parties typically bear their own costs of litigation, including attorney's fees. Thus, "[u]nder the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." Trizechahn Gateway LLC v. Titus, et al., 976 A.2d 474, 482 (Pa. 2009); see also Waynesborough Country Club of Chester County v. Diedrich Niles Bolton Architects, Inc., No. 07-155, 2008 WL 4916029, at *3 (E.D. Pa. Nov. 12, 2008). In the instant action, both Greenmoor and Burchick argue that they are entitled to recover their attorneys' fees as the substantially prevailing party under a statute – the

Contractor and Subcontractor Payment Act ("CSPA"). Burchick additionally argues that it is entitled to recover its attorneys' fees pursuant to the parties' agreement. The parties' arguments are discussed below.

### A. Greenmoor's Motion for Attorneys' Fees

A party may recover attorneys' fees under the CSPA only if it is the "substantially prevailing party." 73 P.S. 512(b). The substantially prevailing inquiry does not "turn[] on a simple mathematical comparison of the parties' respective recoveries" or "simply because a party won a net judgment." Zavatchen v. RHF Holdings, Inc., 907 A.2d 607, 609 (Pa. Super. Ct. 2006). Instead, "to qualify as a substantially prevailing party, the subcontractor . . . need[s] not only to recover on its claim but also to prove the contractor, without good faith reason, failed to comply with [the CSPA's] mandate of prompt payment." Zimmerman v. Harrisburg Fudd I, L.P., 984 A.2d 497, 503 (Pa. Super. Ct. 2009) (emphasis added) (citing with approval LBL Skysystems (USA), Inc. v. APG-America, Inc., 514 F. Supp. 2d 704, 713 (E.D. Pa. 2007)). "While the mandatory language of section 512(b) requires an award of attorney's fees to a substantially prevailing party, the issue of whether any party to a lawsuit substantially prevailed is left to the trial court's discretion." Zavatchen, 907 A.2d at 610 (citing John B. Conomos, Inc. v. Sun Co., Inc., 831 A.2d 696, 711 (Pa. Super. Ct. 2003)). Thus, the key issue before the Court is whether Greenmoor is the "substantially prevailing party" within the meaning of the CSPA. The Court concludes that it is not a substantially prevailing party.

As an initial matter, the Court disagrees with a fundamental premise of Greenmoor's argument. Greenmoor asserts that it is a substantially prevailing party because "a prevailing party who demonstrates a violation of [the] CSPA is also a substantially prevailing party." (Pl's Mem. of Law in Supp. of Mot. for Attorneys' Fees and Expenses (Doc. 153) ("Pl's Br.") at 7-8.) More specifically, Greenmoor argues that it is entitled to recover fees because it "was entitled to

- 2 -

recover on the payment applications and escrow account" and because this Court determined that Burchick was obligated to pay interest under the CSPA. Id. at 6.

That Greenmoor may have "received a net recovery in the CSPA litigation" (Pl's Br. at 6) does not turn Greenmoor into a "substantially prevailing party." The Pennsylvania Superior Court's most recent decision in Zimmerman, supra, illustrates this point. In Zimmerman, the Superior Court was "persuaded by the analysis" in LBL Skysystems, a case in which the subcontractor, despite recovering "'a significant proportion of the damages' it sought in its CSPA claim," was not the substantially prevailing party because the "'[the contractor] did not wrongfully withhold payments.'" Zimmerman, 984 A.2d at 503 (quoting LBL Skysystems, 514 F. Supp. 2d at 713). The Superior Court stated:

> Stated differently, to qualify as a substantially prevailing party, the subcontractor in LBL Skysystems needed, not only to recover on its claim, but also to prove the contractor, **without good faith reason**, failed to comply with [CSPA's] mandate of prompt payment.

Id. (citing LBL Skysystems, 514 F. Supp. 2d at 713) (emphasis added). As the emphasized language illustrates, merely "demonstrat[ing] a violation of the CSPA" (Pl's Br. at 7-8) does not render the recovering party as a "substantially prevailing party."[1] Indeed, if it were the case that merely recovering on a CSPA claim could render a party the substantially prevailing party, there seemingly would be no need for separate provisions and standards under the CSPA for interest, penalties and attorneys' fees. Cf. Zavatchen, 907 A.2d at 609 (rejecting notion that mathematical comparison of the parties' recovery is determinative of substantially prevailing party issue,

---

[1] In Zimmerman, the court determined that plaintiff was the substantially prevailing party "as a matter of law" because he had been awarded "his *entire* claim." Zimmerman, 984 A.2d at 503 (emphasis in original). Here, unlike in Zimmerman, Greenmoor acknowledges that it was not awarded its entire claim. See Pl's Br. at 6 (stating that "it received a net recovery in the CSPA litigation"); id. at 8 ("Greenmoor recovered nearly 100% of the amounts invoiced to Burchick during the performance of the Moorhead Project, which represents fifty percent (50%) of the total amount sought by Greenmoor as payment for services performed, including the extra work.")

noting that "requiring an award of attorney's fees simply because a party won a net judgment would effectively 'write out the modifier 'substantially'''") (quoting Bridges PBT v. Chatta, 821 A.2d 590, 593 (Pa. Super. Ct. 2003)).

Despite quoting the above language from Zimmerman, Greenmoor asserts that no "good faith exception" exists in the context of attorneys' fees.[2] But again, as the emphasized language in Zimmerman illustrates, whether Burchick had good faith reasons for not making the payments at issue is relevant to the substantially prevailing inquiry. See Zimmerman, 984 A.2d at 503; see also John B. Conomos, Inc., 831 A.2d at 711 (stating that the "trial court was correct in stating that the [CSPA] requires penalties and reasonable attorneys fees for untimely payment of amounts improperly withheld").

As for the issue of good faith, Greenmoor asserts that Burchick did not act in good faith because Burchick did not make a "good faith attempt to identify or evaluate deficiency items, to timely notify Greenmoor of such, or to otherwise comply in good faith the obligations of [§]507 of [the] CSPA." (Pl's Br. at 11.) Greenmoor appears to suggest that Burchick withheld Greenmoor's payments as deficiency items under § 511 and further, that it did not comply with the requirements for withholding deficiency items.[3] But, it is not clear why Greenmoor characterizes Burchick's withholding in this manner. This Court previously awarded Greenmoor a total of $518,638.20, which consisted of the sums that Burchick withheld from, but acknowledged it owed to, Greenmoor. Burchick maintained that it could withhold these sums

---

[2] Greenmoor relies on Eastern Electric Corporation of New Jersey v. Shoemaker Construction Corporation, 657 F. Supp. 2d 545, 561-62 (E.D. Pa. 2009), a decision that predates Zimmerman. The court in Eastern Electric, in turn, cited to another decision of the United States District Court for the Eastern District of Pennsylvania – F.S.I, Inc. v. Viola Contractors, Inc., 2003 U.S. Dist. LEXIS 1288, at *10 (E.D. Pa. Jan. 21, 2003) – that also predates Zimmerman. As Zimmerman is the Pennsylvania Superior Court's most recent decision concerning attorneys' fees under Pennsylvania's CSPA, the Court does not find either of the non-binding federal court decisions upon which Greenmoor relies to be persuasive on the issue of whether a "good faith exception" exists for purposes of an award of attorneys' fees.

[3] Section 511 of the CSPA permits a contractor to "withhold payment from any subcontractor responsible for a deficiency item." 73 P.S. § 511(a).

not as deficiency items under § 511, but instead, as an offset under, among other provisions, Article VIII of the Subcontract Agreement. Specifically, Burchick asserted an affirmative claim for recovery in this action that it believed would offset any payment obligations it had to Greenmoor. As the Court previously found, Burchick's withholding for this reason was based on a good faith belief that it could avail itself of Article VIII.[4] (See Findings of Fact & Conclusions of Law (Doc. 143) ("Findings and Conclusions") at p. 109.) As Burchick had good faith reasons for not making the payments to Greenmoor, the Court, in its discretion, finds that Greenmoor is not a "substantially prevailing party" under the CSPA. Accordingly, Greenmoor is not entitled to recover its attorneys' fees under the CSPA.[5]

   B.   **Burchick's Motion for Attorney's Fees**

Burchick contends that it is entitled to recover its attorneys' fees and related costs either (i) under the terms of the Subcontract Agreement or alternatively, (ii) under the CSPA as the substantially prevailing party. The Court concludes that Burchick cannot recover its attorneys' fees and costs under the CSPA, but it may recover, on a limited basis, its attorneys' fees and costs under the terms of the Subcontract Agreement.

   *1. Statutory Basis*

Burchick argues that it is the substantially prevailing party under the CSPA because it "acted properly in terminating the Subcontract Agreement," "withheld amounts that it believed in good faith it was entitled to [with]hold," and because the "Court determined that [it] was only

---

[4]   In the contemporaneously issued Memorandum Order on the parties' Motions to Amend or Alter Judgment, the Court found that Article VIII is inapplicable in the specific context of this action. See Memorandum Order dated 8/20/2010 (Doc. 165). This finding, however, does not alter the fact that Burchick relied on Article VIII in good faith. Burchick's mistaken belief, without more, cannot demonstrate that it acted in bad faith. Cf. Allstate Indem. Co. v. Coroniti, No. 04-0808, 2006 WL 1410820, at *4 (M.D. Pa. May 19, 2006) (rejecting argument premised on the doctrine of unclean hands that insurer acted in bad faith where insurer was mistaken as to the amount of coverage under an insurance policy, stating that a "mistaken belief . . . does not rise to the level of bad faith"), aff'd, 2007 WL 3118329 (3d Cir. Oct. 24, 2007).

[5]   Greenmoor has argued only that it is statutorily entitled to fees under the substantially prevailing party standard set forth in the CSPA.

liable for amounts that it has always acknowledged to be otherwise due." (Def's Mem. of Law in Supp. of Renewed Mot. for Attorneys' Fees, Related Costs and Expenses (Doc. 155) ("Def's Br.") at 11.) The Court disagrees.

Although a defendant may recover attorneys' fees under the CSPA, "it is within the trial court's discretion to determine if a defendant is a 'substantially prevailing' party." Zavatchen, 907 A.2d at 608. In addition, a defendant can be considered to have prevailed where a judgment was entered in its favor or if the plaintiff's claim was "groundless or frivolous." Id. at 610-11 (citing Profit Wize Mktg. v. Wiest, 812 A.2d 1270, 1275-76 (Pa. Super. Ct. 2002); Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)).

Although Greenmoor recovered less than what it sought or what Burchick ultimately recovered, this is insufficient to render Burchick a prevailing party, let alone a substantially prevailing party. Like the defendant in Zavatchen, Burchick "did not clearly prevail in the sense that a judgment was entered in [its] favor or that [Greenmoor's] [CSPA] claim was [found to be] groundless or frivolous." Zavatchen, 907 A.2d at 610-11 (affirming finding that defendants did not substantially prevail where plaintiff recovered less than 1% of the amount sought) (citing cases). In addition, because Burchick "did not meet the threshold that is necessary to be a 'prevailing party'" under the CSPA, the Court finds that it "did not meet the higher standard that is required to become 'a substantially prevailing party'" under the CSPA. Id. at 611. Accordingly, Burchick is not entitled to recover its attorneys' fees and costs under the CSPA.

### 2. *Contractual Basis*

Burchick alternatively argues that it is entitled to recover its fees and costs under Article IV of the Subcontract Agreement. The Court now turns to this issue.

As set forth above, attorneys' fees may be awarded where there is a clear agreement of the parties. "[C]ontracting parties may structure their agreement [for the recovery of attorneys'

- 6 -

fees] as they choose, and the Court should enforce such unambiguous contracts as they are written." Waynesborough Country Club, 2008 WL 4916029, at *3; see also Dunkin' Donuts, Inc. v. Guang Chyi Liu, Nos. 99-3344, 00-3666, 2002 WL 31375509, at *2 (E.D. Pa. Oct. 17, 2002) (stating same). As a preliminary matter, Burchick asserts that Article IV is clear and unambiguous (Def's Br. at 7-8), and Greenmoor does not dispute this. See Pl's Mem. of Law in Opposition to Def's Mot. (Doc. S162) ("Pl's Opp.") at 4 (stating that Greenmoor "agrees that the language in question is clear and unambiguous and can be applied by this Court without taking extrinsic evidence"). Accordingly, the Court will apply the clear and unambiguous language of Article IV to determine whether Burchick is entitled to recover from Greenmoor its attorneys' fees and costs.

Article IV, which sets forth Greenmoor's liability, provides in relevant part:

> **ARTICLE IV:** **Subcontractor's Liability**
>
> \* \* \*
>
> b. **[Greenmoor] shall be liable to [Burchick] for all costs [Burchick] incurs as a result of [Greenmoor's] failure to perform this Subcontract in accordance with its terms.** [Greenmoor's] failure to perform shall include the failure of its suppliers and/or subcontractor of any tier to perform. [Greenmoor's] **liability shall include, but not be limited to** (1) damages and other delay costs payable to [Burchick] to Owner; (2) [Burchick's] increased costs of performance, such as extended overhead and increased performance costs resulting from [Greenmoor]-caused delays of improper [Greenmoor] work; (3) warranty and rework costs; (4) liability to third parties; and (5) **attorney's fees and related costs**. [Greenmoor's] obligations under this Article IVb shall be in addition to any indemnity liability imposed by the Subcontract, including, without limitation, the Contract Documents.
>
> \* \* \*

(Art. IV, Def. Ex. 33) (emphasis added).

The plain language of Article IV provides that Greenmoor is obligated to pay Burchick's attorneys' fees and costs if Burchick incurs such fees and costs **as a result of** – or because of – Greenmoor's failure to perform. Stated differently, the provision clearly contemplates that Greenmoor's liability for Burchick's attorneys' fees and costs depends upon the existence of a causal relationship between Greenmoor's failure to perform and Burchick's fees and costs. Although Greenmoor attempt to argue otherwise, the provision does not limit Greenmoor's liability in any other way. The salient issue before the Court, then, is whether the attorney's fees and costs Burchick incurred in the instant litigation were as a result of – or causally related to – Greenmoor's failure to perform on the Project.

Burchick argues that it is entitled to recover **all** of the attorneys' fees and costs it incurred "in defending the State Court Case and this Action"[6] because all of the fees and costs were incurred "as a result of Greenmoor's failure to perform" under the Subcontract. (Def's Br. at 5.) Greenmoor disagrees and argues that Burchick is entitled to **none** of its attorneys' fees and costs. Greenmoor contends that the provision cannot be construed so broadly as to permit Burchick to recover fees it incurred in choosing to defend "itself against an action for reinstatement and claims that it had improperly withheld due and owing payments for work already performed under the Subcontract agreements to Greenmoor." (Pl's Opp. at 3.) It argues that the "legal fees were incurred not because of a breach of the Subcontract agreements, but because Burchick did not honor its obligations to make payments to Plaintiff under CSPA and chose to defend this lawsuit instead." Id. at 3-4. As such, it characterizes the instant action as one consisting of "claims related to the failure to make payments admittedly due and owing to Plaintiff, as well as a claim for lost profits for wrongfully terminating the contracts." Id. at 4. In other words,

---

[6] The "State Court Action" refers to the injunction action brought by Greenmoor against Burchick in the Court of Common Pleas of Washington County.

Greenmoor views the instant action as one largely for "recovery of sums due under a contract." Id. at 5. Greenmoor's limited view of this action and of the applicability of Article IV to Burchick's ability to recover its attorneys' fees is unpersuasive.

Notably, it is not as though Greenmoor believes that it could never be liable for attorneys' fees under Article IV. To the contrary, Greenmoor acknowledges that Article IV is "only applicable to any additional costs incurred by Burchick as a result of a breach." (Pl's Opp. at 5) (emphasis in original). It further asserts that "[l]egal fees which may justifiably be recoverable under this provision would include such costs as legal fees incurred in removing the breaching contractor from the jobsite . . . ." (Pl's Opp. at 4 n. 1.) The Court initially observes that the provision does not speak to costs incurred as a result of a "**breach**," but instead, to costs incurred as a result of Greenmoor's "failure to perform." In any event, Greenmoor suggests that if Burchick had brought a legal action to have Greenmoor removed from the Project – rather than simply terminate Greenmoor without any judicial intervention, as it chose to do – then Burchick would have been able to recover its attorney's fees and costs associated with such a legal action.[7] Stated differently, Greenmoor seems to suggest that Burchick could have recovered its fees as a plaintiff, but cannot do so as a defendant. In fact, Greenmoor asserts that "it is clear on its face that the provision . . . does not apply to the attorneys' fees incurred in the **defense** of a claim for recovery of sums due under a contract." (Pl's Opp. at 5) (emphasis added). The problem with Greenmoor's argument is that it provides no explanation for why the Court should make such a distinction (i.e., Burchick's status as a litigant) to disallow attorney's fees. There simply is no

---

[7] It should go without saying, then, that Greenmoor acknowledges that it can be responsible for certain fees and costs incurred in litigation **between** Burchick and Greenmoor (to be distinguished from fees and costs incurred in litigation between Burchick and third parties). The issue before the Court, then, is not whether, as an initial matter, the provision applies to costs incurred in litigation between the parties, but instead whether the nature and substance of the litigation between the parties gives rise to Greenmoor's liability for Burchick's attorney's fees and related costs.

language in the provision that allows for a distinction based on Burchick's status as a litigant and the Court cannot draw such a distinction. As previously discussed, the relevant inquiry is into the nature and substance of the litigation between Greenmoor and Burchick and whether that litigation was "as a result" of, or causally related to, Greenmoor's failure to perform.

In this regard, Greenmoor seems to ignore the fact that this action was about more than just nonpayment. Contrary to Greenmoor's assertions, the instant litigation – at least in part – was precisely as a result of Greenmoor's failure to perform under the Subcontract Agreement. Indeed, an issue central to this case was whether Burchick properly exercised its rights under the Subcontract Agreement to terminate Greenmoor from the Project due to poor performance. To this end, Burchick asserted Counterclaims in the instant action, specifically a Counterclaim for breach of contract. (Burchick's Answer, Affirmative Defenses and Counterclaim (Doc. 43) ("Burchick's Counterclaim") at ¶¶ 1-5, pp. 20-21.) Burchick alleged that Greenmoor breached the Subcontract Agreement by failing to perform its duties as the asbestos abatement subcontractor on the Project:

> 3. Greenmoor breached the Subcontract [Agreement] by, inter alia, (a) **failing to perform** its work in accordance with the standards imposed by the Subcontract; (b) by **failing to comply** with applicable safety protocols, rules and regulations imposed by the Subcontract and/or applicable law; (c) **failing to perform** in accordance with the time requirements set forth by the Subcontract, thereby causing a delay in the progress of the Project; (d) **failing to perform** its work to the satisfaction of the GSA; (e) failing to perform its work in the sequence required by the Subcontract; and (f) **failing to properly coordinate its work** with that of other subcontractors on the Project.

(Burchick's Counterclaim at ¶ 3) (emphasis added). Through its Counterclaim, Burchick squarely placed Greenmoor's performance – more specifically, Greenmoor's failure to perform – at issue. Burchick asserted that it was injured "as a result" of Greenmoor's alleged breaches of the Subcontract, including its failure to perform under the Subcontract. (Burchick's

Counterclaim at ¶¶ 2-5.) Accordingly, it sought to recover the damages it purportedly had incurred **because of** Greenmoor's alleged breaches.

Beyond Burchick's Counterclaim, a review of Greenmoor's Amended Complaint reveals that Greenmoor also affirmatively placed its performance at issue in the instant litigation. In Count VII of its Amended Complaint, for example, Greenmoor asserted that "Burchick's termination of Greenmoor was wrongful and without justification" and that the termination was "a breach of its obligations to Greenmoor." (Am. Compl. (Doc. 42) at ¶¶ 94-101.) To establish that it was wrongfully or unjustifiably terminated, Greenmoor necessarily had to establish that it properly performed its duties under the Subcontract and that Burchick, therefore, had no basis to terminate it. Simply put, Greenmoor had to establish that it did not fail to perform.

There can be no question that Greenmoor's performance – and, indeed, its failure to perform – was at issue in the instant action. Over the course of the eleven-day trial, the Court heard testimony nearly every day on the issue of Greenmoor's performance. Greenmoor proffered the testimony of six witnesses, nearly all of whom testified (some of whom exclusively testified) on Greenmoor's performance. Greenmoor's only damages expert – Mark Shaffer – testified on the fifth day of trial. In short, the parties presented extensive evidence and testimony at trial on Greenmoor's performance and also proposed findings of fact and conclusions of law on the subject. The Court, accordingly, issued its findings of fact and conclusions of law on the issue of "whether Greenmoor breached the Subcontract Agreement by failing to perform in accordance with the Agreement and whether Burchick properly terminated Greenmoor under the Agreement." (Findings and Conclusions at p. 88; see generally id.) In short, contrary to Greenmoor's assertions, the instant litigation was not just limited to claims or issues of

nonpayment under the CSPA.[8] As such, Burchick incurred attorneys' fees and costs not only "as a result of" defending against Greenmoor's claims for nonpayment, but also "as a result of" defending against Greenmoor's claims of improper termination and "as a result of" proving its own breach of contract claims premised on Greenmoor's failure to perform. Cf. Waynesborough Country Club, 2008 WL 4916029, at *5 (allowing plaintiff to recover attorneys' fees in an action against defendant-architecture firm for professional negligence and breach of contract and concluding that "the contract between [plaintiff] and [defendant] is clear and unambiguous in providing for 'expenses including reasonable attorneys' fees' arising from 'any breach or default' of the [agreement] or from 'a negligent act, error or omissions of [defendant] arising out of the performance or failure to perform professional services under' the contract"); Dunkin' Donuts, Inc., 2002 WL 31375509, at *2 (allowing attorneys' fees for defendant who prevailed in a breach of contract dispute against plaintiff under a contractual provision obligating plaintiff to pay defendant for "all damages, costs and expenses, including without limitation . . . reasonable attorneys' fees, incurred by [defendant] as a result of any such default or termination"); Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp., No. 93-3065, 1995 WL 275594, at *3 (N.D. Ill. May 8, 1995) (awarding plaintiff attorneys' fees pursuant to a provision under which defendant was responsible for plaintiff's fees and expenses "arising as a result of 'any breach of any representation or warranty of [defendant] . . . or any breach or default by [defendant] under any of the covenants or agreements . . . ,'" finding that "under the terms of the Agreement,

---

[8] The Court observes that, in its original Complaint in this Court, Greenmoor indeed focused on nonpayment. See generally Complaint (Doc. 1). In its Amended Complaint, however, Greenmoor alleged more than just nonpayment. See generally Am. Compl. (Doc. 42). Indeed, in the Motion to Amend Complaint, Greenmoor made clear that it wished to "expand the scope of the federal court action" to assert those claims (like Count VII of the Amended Complaint) that it had asserted in the state court action. See Doc. 40 at ¶ 13. Greenmoor characterized its state court action as one in which it sought "both legal and equitable relief," with the equitable relief consisting of "an injunction by which it would be reinstated to the Project." Id. at ¶¶ 2-3.

[d]efendants agreed to restore [p]laintiff for any attorneys' fees arising out of a breach of contract by [defendant]"), aff'd, 73 F.3d 150 (7th Cir. 1996).

For all of these reasons, the Court concludes that Burchick incurred at least some portion of its attorneys' fees "as a result of" Greenmoor's failure to perform under the Subcontract Agreement. Burchick may recover its attorneys' fees and related costs insofar as those fees and costs pertain to Greenmoor's failure to perform. That is, Burchick may recover the portion of its attorneys' fees and costs that it incurred in prosecuting its Counterclaim and defending against Greenmoor's claims that it was improperly terminated. Burchick, however, is not entitled to recover its fees and costs incurred for any other aspects of this litigation, e.g., Greenmoor's claims for nonpayment under the CSPA, because those fees and costs were not incurred "as a result of" Greenmoor's breach.

Although a limited recovery is warranted, in light of the rulings set forth herein, the Court cannot award a sum certain at this time. Before the Court makes an award of fees and costs, Burchick must provide the Court with all relevant documentary evidence of its fees and costs such that the Court can assess the reasonableness of those fees and costs. In addition, consistent with this Memorandum Order, Burchick either must itemize or segregate the fees and costs it incurred in only prosecuting its Counterclaim and defending against Greenmoor's claim of improper termination, or provide the Court with a method by which it can reduce Burchick's total incurred attorneys' fees and costs to reflect only these items. To this end, the Court will entertain supplemental briefing on the narrow and limited issue of the amount of fees and costs that are appropriate in light of the rulings in this Memorandum Order. Along with its supplemental briefing, Burchick must provide to the Court (and to Greenmoor) all documentary evidence relevant to this issue.

## II. ORDER

For all of the reasons set forth above, as well as the reasons set forth in the Court's Findings of Fact and Conclusions of Law (Doc. 143), Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. 152) is **DENIED** and Defendant Burchick Construction Company's Renewed Motion for Attorneys' Fees, Related Costs and Expenses (Doc. 154) is **GRANTED IN PART AND DENIED IN PART**. Consistent with this Memorandum Order, Defendant's supplemental briefing on the narrow and limited issue of the amount of attorneys' fees, related costs and expenses is due on or before **September 3, 2010**. Plaintiff's response is due on or before **September 17, 2010**.

**IT IS SO ORDERED.**

/s Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

August 20, 2010

cc (via email):

Thomas C. Gricks, III, Esq.
John K. Gisleson, Esq.
D. Matthew Jameson, III, Esq.
Kurt F. Fernsler, Esq.