IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the Use and Benefit of GREENMOOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, and BURCHICK CONSTRUCTION COMPANY, INC., <br><br> Defendants. | Civil Action No. 06-234 <br><br> Magistrate Judge Cathy Bissoon[1] |

**MEMORANDUM AND ORDER**

**I.   MEMORANDUM**

Pending before the Court is Defendant Burchick Construction Company, Inc.'s Motion to Amend Order and Request for the Court to Determine the Amount of Attorneys' Fees to be Awarded to Burchick Construction Company, Inc. and to Enter a Molded Judgment (Doc. 181). For the reasons stated herein, Defendant Burchick's motion will be granted in part and denied in part.

**BACKGROUND**

The facts of this case were set forth in the Court's Findings of Fact and Conclusions of Law (Doc. 143). Following a bench trial, the Court entered judgment (Doc. 144) and deferred ruling on the parties' requests for attorneys' fees and costs. The Court subsequently awarded fees and costs to Defendant Burchick Construction Company, Inc. ("Defendant") pursuant to the parties' Subcontract, which makes Plaintiff liable to Defendant for attorneys' fees and costs incurred "as a result of [Plaintiff's] failure to perform [the] Subcontract in accordance with its

---

[1]   By consent of the parties, the undersigned sits as the District Judge in this case. See Consent forms (Doc. 70).

1

terms." Memorandum Order (Aug. 20, 2010) (Doc. 166). The Court ordered supplemental briefing on the limited issue of the amount of attorneys' fees, related costs and expenses recoverable under the Subcontract. Id.

Defendant filed a supplemental brief (Doc. 167) on September 3, 2010. Plaintiff filed a notice of appeal (Doc. 168) on September 16, 2010, and a supplemental brief (Doc. 169) regarding the amount of attorneys' fees on September 17, 2010. Defendant filed a notice of cross appeal (Doc. 171) on September 28, 2010. On September 30, 2010, the U.S. Court of Appeals for the Third Circuit ordered the parties to file written responses addressing whether the Court of Appeals had jurisdiction over the appeals. Doc. 173-1. This Court then deferred adjudication of the amount of attorneys' fees to be awarded to Defendant, pending further ruling from the Court of Appeals. Doc. 175.

The Court of Appeals, on June 21, 2011, dismissed the appeals for lack of jurisdiction because this Court's order granting attorneys' fees without quantifying the amount to be awarded was not a final order. See Doc. 182-1. On July 1, 2011, Defendant filed the pending Motion to Amend Order and Request for the Court to Determine the Amount of Attorneys' Fees to be Awarded to Burchick Construction Company, Inc. and to Enter a Molded Judgment (Doc. 181). Defendant requests that this Court: (1) amend its August 20, 2010 Order (Doc. 165) to eliminate daily interest from accruing in favor of Plaintiff from September 16, 2010 to June 21, 2011; (2) determine the amount of attorneys' fees to be awarded to Defendant; and (3) enter a final molded judgment. Plaintiff filed a response (Doc. 185) on July 19, 2011.

**ANALYSIS**

A. **Defendant's Request to Amend the August 20, 2010 Order**

Defendant requests that this Court amend its August 20, 2010 Order (Doc. 165) to eliminate daily interest between September 16, 2010 and June 21, 2011, the time period for

which Plaintiff's appeal to the U.S. Court of Appeals for the Third Circuit was pending. Defendant argues that Plaintiff "inappropriately and prematurely" filed its appeal, and that "[u]nder principals [sic] of fundamental fairness and using the Court's inherent powers to modify its previous Order as justice requires, this Court should exclude the imposition of daily interest between September 16, 2010 and June 21, 2011." Def.'s Br. at 4-5 (Doc. 182).

Defendant cites no authority to permit this Court to extend its inherent authority to eliminate the mandatory imposition of interest under the Pennsylvania Contractor and Subcontractor Payment Act ("CSPA"). See 73 P.S. § 507(d) ("If any progress or final payment to a subcontractor is delayed beyond the date established in subsection (b) or (c), the contractor or subcontractor <u>shall</u> pay the subcontractor interest . . . ." (emphasis added)). Further, Defendant has not demonstrated that justice requires amendment of this Court's August 20, 2010 Order. Plaintiff's appeal appears to have been taken in good faith and Defendant does not allege otherwise. Defendant merely asserts that Plaintiff "should have known" that the appeal was premature. Def.'s Br. at 4 (Doc. 182). Finally, Defendant has had (and continues to have) the benefit of the use of the money owed to and not yet paid to Plaintiff. Thus, Defendant's motion to amend this Court's August 20, 2010 Order will be denied.[2]

### B. **Amount of Attorneys' Fees to be Awarded**

In light of the appellate court's dismissal of the parties' appeals for lack of jurisdiction, this Court will proceed to consider the parties' arguments set forth in their supplemental briefing on the amount of fees to be awarded (Docs. 167, 169) and determine the amount of attorneys' fees and costs to be awarded to Defendant.

---

[2] In light of the continuing accrual of interest, the Court will deny Defendant's request for a molded judgment to reflect a net award.

The Supreme Court has emphasized that determination of fees "should not result in a second major litigation." Fox v. Vice, __ U.S. __, 131 S.Ct. 2205, 2216 (2011) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). As the fee applicant, Burchick must provide documentation to meet the burden of establishing entitlement to an award. Id. "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Id. In apportioning fees among multiple claims, a court may consider the time spent at trial for each claim to estimate a proper division of time to calculate a reasonable fee award. McKenna v. City of Philadelphia, 582 F.3d 447, 458 (3d Cir. 2009).[3]

1. Fees and Costs Associated with Litigation in This Court

This Court determined that under the parties' contract, which permits recovery of attorneys' fees and costs incurred "as a result" of Plaintiff's "failure to perform," Defendant may recover fees and costs incurred in pursuing its counterclaim and defending against Plaintiff's claim that Plaintiff was improperly terminated. Memorandum Order at 13 (Doc. 166). Defendant admits that it cannot precisely determine what portion of attorneys' fees in this litigation is attributable to Plaintiff's failure to perform. Def.'s Supp. Br. at 12 (Doc. 167). Defendant estimates the percentage of attorneys' fees attributable to Plaintiff's failure to perform is equal to the percentage of trial testimony related to Plaintiff's performance. Id. at 12-13.

---

[3] The "lodestar" method is used to determine a reasonable fee award when enforcing an agreement to pay reasonable attorneys' fees. See Merola v. Atlantic Richfield Co., 493 F.2d 292, 298 (3d Cir. 1974). This method starts with determining the number of hours spent in various legal activities by the individual attorneys and the reasonable hourly rate for the individual attorneys. Id. Plaintiff has not challenged the reasonableness of the total hours spent by Defendant's attorneys or the hourly rates charged by Defendant's attorneys.

Plaintiff argues that Defendant has not met its burden of proving its entitlement to the requested fees because "(1) the trial transcript cannot adequately serve as a proxy for the entire matter; and (2) [Defendant] relies, in large part, on conflating [Plaintiff's] 'performance' and its 'failure to perform.'" Pl.'s Supp. Br. at 5 (Doc. 169). Plaintiff argues that Defendant, therefore, should not be entitled to <u>any</u> fees. <u>Id.</u> at 7.

While the time spent on certain claims at trial may not exactly match the time spent on those claims for the entire litigation, the time spent on claims at trial may be considered in determining a reasonable fee award. <u>See</u> <u>McKenna</u>, 582 F.3d at 458. With respect to Plaintiff's complaint that Defendant seeks fees for time spent on background testimony that "was equally required for Greemoor's CSPA claims as it was for termination claims," such testimony would have been required with or without Plaintiff's CSPA claims. Fees associated with such testimony were, therefore, incurred "as a result of" Plaintiff's "failure to perform," and are recoverable by Defendant.

    a. <u>"Performance" Category</u>

Plaintiff next argues that even if the time spent at trial is considered, Defendant attributed too much of the trial testimony to Plaintiff's failure to perform. According to Defendant, 69.4% of the testimony at trial related to Plaintiff's performance. Def.'s Supp. Br. at 13 (Doc. 167). According to Plaintiff, only 45% of the trial testimony is attributable to Plaintiff's failure to perform. Pl.'s Supp. Br. at 11-13 (Doc. 169). A major difference between the parties' determinations appears to be the "background" information that Plaintiff asserts was required for both Plaintiff's CSPA claims and Plaintiff's termination claim. For example, Defendant asserts that all of the testimony of Brice Shaffer and George Povelitis is attributable to Plaintiff's performance. Def.'s Supp. Br. Exh. I (Doc. 167-11). In contrast, Plaintiff asserts that only 14 out of 199 pages (7 %) of that testimony relates to Plaintiff's failure to perform. Pl.'s Supp. Br.

5

at 11 (Doc. 169). Plaintiff attributes the remainder of that testimony to "Background on Abatement/Project." Id. As explained above, this "background" testimony would have been required whether or not Plaintiff had its CSPA claim. Fees and costs associated with such testimony were incurred as a result of Plaintiff's failure to perform, and Defendant may recover such fees and costs.

Defendant's estimate of the amount of time spent during this litigation as a result of Plaintiff's failure to perform is further supported by the declaration of D. Matthew Jameson III, Esq., trial counsel for Defendant. Jameson Decl., Def.'s Supp. Br. Exh. F (Doc. 167-6). Mr. Jameson is a trial attorney with approximately 18 years of experience "representing contractors, subcontractors and others within the construction and related industries." Jameson Decl. ¶¶ 1-3 (Doc. 167-6). Mr. Jameson managed this case on behalf of Defendant and estimates "that a minimum of eighty percent (80%) of the time and expenses incurred were directly related to Greenmoor's performance and Burchick's resultant Counterclaim." Id. at ¶ 12. Mr. Jameson believes "that the amount of time spent in pleading stage, the discovery stage, and the pre-trial stage of this case was consistent with the division of time spent during the trial." Id. at ¶ 13.

As the Court previously found, the parties' Subcontract entitles Defendant to some portion of the fees and costs expended in this litigation. Doc. 166. The Court cannot and need not "achieve auditing perfection" in determining what proportion of Defendant's attorneys' fees and costs were incurred as a result of Plaintiff's failure to perform. Fox, __ U.S. at __, 131 S.Ct. at 2216. The Court may rely on its "overall sense" of this case, the time spent at trial on various issues, and Mr. Jameson's estimate of the proportion of time and expenses incurred as a result of Greenmoor's failure to perform. Id.; McKenna, 582 F.3d at 458. In light of these considerations, the Court finds that 69.4% is a reasonable estimate of the proportion of the

attorneys' fees and costs incurred in this litigation as a result of Greenmoor's failure to perform. Fox, __ U.S. at __, 131 S.Ct. at 2216.

      b.  <u>"Overbilling" Category</u>

According to Defendant, an additional 9.9% of the trial testimony relates to what Defendant categorizes as "Overbilling." Def.'s Supp. Br. at 13 (Doc. 167). The "Overbilling" category relates to items for which Plaintiff sought compensation even though Plaintiff did not bill for those items until after reinstatement of Plaintiff's termination in the fall of 2006; namely, disposal of ceiling tiles, installation of EPDM, and performance of the Option Work. Id. Defendant asserts that this category relates to Plaintiff's "failure to perform" in that Plaintiff "submitted these improper claims in violation of the billing protocols of the Subcontract." Id. at 14. Defendant does not specify any particular "billing protocols" in the Subcontract, and does not identify any particular term of the Subcontract that Plaintiff allegedly failed to perform. See id.

Plaintiff counters that its entitlement to amounts sought in the "Overbilling" category was not predicated on factual questions surrounding Plaintiff's performance, but depended on this Court's findings regarding contract meaning. Pl.'s Supp. Br. at 13 (Doc. 169). The Court agrees with Plaintiff. Whether Plaintiff was entitled to recover amounts claimed for disposal of ceiling tiles, installation of EPDM, and performance of the Option Work all related to work performed by Plaintiff under the Subcontract. The dispute in each of those instances was over whether such work was included in Plaintiff's scope of work under the Subcontract. See Findings of Fact & Conclusions of Law at 55-56, 61-66, 115-16, 121-24 (Doc. 143). The dispute over the "Overbilling" category was a result of the parties' disagreement over the scope of work, not a result of Plaintiff's failure to perform. Defendant, therefore, cannot recover fees and costs associated with litigating the "Overbilling" category of issues.

Thus, Defendant will be awarded 69.4% of its fees and costs incurred for this litigation in this Court, or $467,568.74.[4]

2. State Court Action

Plaintiff argues that Defendant may not recover fees associated with a related state court action. Pl.'s Supp. Br. at 9-10 (Doc. 169). According to Plaintiff, this Court's August 20, 2010 Memorandum Order (Doc. 166) awarding fees to Defendant does not entitle Defendant to fees and costs stemming from the state court action. Pl.'s Supp. Br. at 9-10 (Doc. 169). But this Court did not limit Defendant's fee recovery in this manner. As set forth in this Court's Memorandum Order, and as permitted by the parties' contract, Defendant may recover fees and related costs incurred "as a result of" Plaintiff's "failure to perform." Memorandum Order at 13 (Doc. 166). If Defendant incurred fees and costs associated with the state court action "as a result of" Plaintiff's "failure to perform," the parties' contract authorizes Defendant to recover such fees and costs from Plaintiff.[5]

Plaintiff next argues that the issue before the court in the state court action was not Plaintiff's performance, as demonstrated by the state court's statement that: "The heart of this dispute is not whether Burchick wrongfully terminated Greenmoor from the project; rather, the heart of the dispute is whether after such deficiency as alleged by Burchick during one contract,

---

[4] This amount does not include fees and costs for August 2010, which were unbilled as of September 3, 2010, when Defendant filed its Supplemental Brief (Doc. 167) regarding the amount of fees to be awarded. The Court will award fees and costs for August 2010 upon Defendant's submission of evidence demonstrating that such fees and costs have been billed to Defendant. If Defendant wishes to submit such evidence, Defendant shall do so by August 3, 2011.

[5] Plaintiff also suggests that this Court cannot award fees associated with another action not before this Court. Pl.'s Supp. Br. at 10 (Doc. 169). Because the fee award in this action is authorized by a contract between the parties, this Court may award fees associated with the state court action as long as the award is authorized by the contract. See Merola v. Atlantic Richfield Co., 515 F.2d 165, 173 (3d Cir. 1975) (holding that where basis for fee award is contract, whether party was entitled to fees for proceedings in appellate court was question of contract interpretation for district court).

can the remaining contracts be anticipatorily terminated for Phases III, IV and V?" Pl.'s Supp. Br. at 10 (Doc. 169).[6] The state court's statement does not support Plaintiff's position. The state court stated that the dispute was about the consequences of "such deficiency as alleged by Burchick." In other words, the state court recognized that the dispute occurred as a result of Plaintiff's failure to perform. Thus, Defendant is entitled to recover fees and costs associated with the state court action, or $264,055.69.[7]

3. Appeal

Defendant seeks fees and costs associated with Plaintiff's premature appeal to the U.S. Court of Appeals for the Third Circuit, arguing that Plaintiff's Notice of Appeal "was solely related to the Court's determination in Burchick's favor that Greenmoor failed to perform under the Subcontract Agreement, i.e., that the termination of Greenmoor was proper." Def.'s Br. at 7 (Doc. 182). Plaintiff counters that its appeal involved issues beyond whether Defendant's termination of Plaintiff was proper. Pl.'s Br. at 8 (Doc. 185). Plaintiff argues that Defendant, therefore, has not demonstrated that it is entitled to any fees associated with the appeal. Id.

The Court agrees with Plaintiff that the appeal was not entirely a result of Plaintiff's failure to perform. In Plaintiff's Concise Summary of the Case filed on October 27, 2010, in Case Number 10-3801 at the U.S. Court of Appeals for the Third Circuit, Plaintiff identified five issues to be raised on appeal. Those issues include the imposition of penalty interest on amounts withheld by Defendant and payable under the Subcontract, and Plaintiff's entitlement to attorneys' fees under the CSPA – issues not related to Plaintiff's failure to perform. In

---

[6] Plaintiffs cite "P605-004," presumably a reference to a trial exhibit, but Exhibit P605 was not offered during trial and does not appear to be part of the record in this Court. See Exhibit and Witness List (Doc. 118).

[7] Plaintiff did not challenge the amount of fees and costs requested by Defendant for the state court action. Plaintiff only argued that this Court's Order (Doc. 166) and the parties' Subcontract do not permit recovery of any fees or costs associated with the state court action.

9

Defendant's Concise Summary of the Case filed on October 29, 2010 in its cross-appeal, Case Number 10-3915, Defendant identified two issues to be raised on appeal: Plaintiff's entitlement to statutory interest on its award under the CSPA and whether the award to Defendant should be offset against Plaintiff's award in calculating CSPA interest. Neither of those issues relate to Plaintiff's failure to perform. Contrary to Defendant's contentions, the entire appeal cannot be attributed to Plaintiff's failure to perform.

Nonetheless, some of the fees associated with the appeal were incurred as a result of Plaintiff's failure to perform. Because the appeal was dismissed for lack of jurisdiction, the issues on appeal were never briefed or considered on the merits. In light of this outcome, the Court concludes that the percentage of fees and costs attributable to Plaintiff's failure to perform is the same for both the appeal and the proceedings in this Court, or 69.4%. Defendant therefore will be awarded 69.4% of the requested fees and costs associated with the appeal, or $6,356.35 in fees and $162.12 in costs.

4. Expert Expenses

Burchick seeks recovery of 40% of expenses relating to its expert witness, Mark Gleason, and 100% of expenses relating to its expert witness, Kurt Varga. Def.'s Supp. Br. at 14-15 (Doc. 167). Plaintiff did not address these expenses and therefore apparently does not object to Defendant's recovery of such expenses. See Pl.'s Supp. Br. (Doc. 169). Defendant thus will be awarded the amounts requested relating to Mr. Gleason, $31,292.84, and Mr. Varga, $19,372.50.

5. Reasonableness of Requested Fees

Plaintiff argues that the fees requested by Defendant Burchick are unreasonable because Defendant Burchick seeks a fee award that is six times its award for actual damages. Pl.'s Supp. Br. at 9 (Doc. 169). Plaintiff ignores Defendant's successful defense against the majority of Plaintiff's claim for damages. Plaintiff sought more than $3.3 million in damages, Pl.'s Pretrial

Statement at 19 (Doc. 74), and was awarded $518,638.20, plus interest. Judgment Order (Doc. 144). In light of Defendant's successful defense against approximately $2.8 million of Plaintiff's damages claim, Defendant's requested fees are not unreasonable.

**CONCLUSION**

For all of the reasons stated above, Defendant's Motion to Amend Order and Request for the Court to Determine the Amount of Attorneys' Fees to be Awarded to Burchick Construction Company, Inc. and to Enter a Molded Judgment (Doc. 181) is granted in part and denied in part. Defendant will be awarded attorneys' fees, costs, and related expenses of: $467,568.74 for litigation of this case in this Court, $264,055.69 for the state court action, $6,518.47 for the appeal, $31,292.84 for Mr. Gleason, and $19,372.50 for Mr. Varga, for a total award of **$788,808.24**.

## II. ORDER

For the reasons stated above, the Court hereby **ORDERS** that Defendant's Motion to Amend Order and Request for the Court to Determine the Amount of Attorneys' Fees to be Awarded to Burchick Construction Company, Inc. and to Enter a Molded Judgment (Doc. 181) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion to Amend this Court's August 20, 2010 Order (Doc. 165) to eliminate daily interest between September 16, 2010 and June 21, 2011 is **DENIED**. Defendant's Motion for the Court to Determine the Amount of Attorneys' Fees to be Awarded is **GRANTED**, and Defendant is awarded **$788,808.24** in attorneys' fees, costs, and related expenses. Defendant's Motion for the Court to Enter a Molded Judgment is **DENIED**. Defendant's request for a hearing is denied as moot.

**IT IS SO ORDERED**.

s/ Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

July 29, 2011

cc (via e-mail):

All counsel of record.